United States District Court
Southern District of Texas

United States of America
Plaintiff

                              Case Number
                              4:12-CR-00600-002

v.

Earnest Gibson IV
Defendant, Pro Se

Exigent and Emergent
Motion for Reduction in Sentence
Under U.S.C.§ as Amended by
the First Step Act of 2018 and the
CARES Act of 2020

      Earnest Gibson IV seeks a reduction in sentence (RIS) under the authority provided by the First Step Act, or to be assigned home confinement under the provisions of the CARES Act, in light of the pandemic emergency involving the spread of the COVID-19 virus.

**Exhaustion requirement**

      Gibson has exhausted the notification requirement to the prison, and the prison's warden, pursuant to the standards set forth under the First Step Act and the CARES Act.

**Legal authority**

      Attorney General Barr's 3rd memorandum (on or about April, 2020) addressed the need for the Bureau of Prisons to utilize the Risk and Assessment System(7/19/19) in conjunction with the First Step Act of 2018 (P.L. 115-391) and the CARES Act of 2020 to increase the use of home confinement at Institutions affected by the COVID-19 pandemic.

a. The First Step Act of 2018 amended 18U.S.C. §3582 in order to modify the previous ways an inmate can seek compassionate release. In section 603 of the Act, Congress amended §3582(c)(1)(A) to permit defendants to move a sentencing court for modification of sentence "after the defendant has fully exhausted all administrative right to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier." See 18 U.S.C. §3582(c)(1)(A).

Section 3582(c)(1)(A) provides in part:

> The court...may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that-
>
> (i) extraordinary and compelling reasons warrant such a reduction... and that such a reduction is consistent with applicable policy statements issued by the sentencing commission[.]

United States Sentencing Guidelines section 1B1.13 and related commentary from the Sentencing Commission were most recently updated on November 1, 2018 before the effective date of the First Step Act on December 21, 2018. Accordingly, the guideline and commentary still presume that a reduction in sentence (RIS) under §3582 must be made upon motion of the Director of the Bureau of Prisons.

The commentary describes certain circumstances under which "extraordinary and compelling reasons" for a reduction exists. But, the commentary does not suggest that the list is exclusive. Application note 1(D), titled "other reason" is a "catch-all" provision, noting that the Director may determine "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." App.

Note 3 states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purpose of this policy statement," mirroring that language of 28 U.S.C. §994. In Application Note 1, thereby allowing a court to consider §3553(a) factors, as well as whether or not the defendant is a danger to the safety of any other person or to the community when determining if a reduction in sentence is warranted. Some courts have concluded that the Commission's failure to amend guideline §1B1.13 and related commentary following the First Step Act does not preclude a court from acting on motions for RIS applying the "catch-all" provision in Application Note 1(D).

b. The CARES Act of 3/26/20 grants authority to the Attorney General to take alternative decisive action regarding the placement of prisoners in home confinement. This provision is expounded upon in section 12003(b)(2) and amends 18 U.S.C. §3624(c)(1) and (2) to grant immediate home confinement for up to 30 days after this national emergency declaration terminates. (see COVID-19 declaration).

The defendant's Case Manager has authority to render an eligibility determination based, in part, from the prison's Assessment of Prisoner Risks. The home-confinement provision offsets emergency conditions which materially affect the functioning of the Bureau of Prisons and which serves as a tool for combatting the dangers that COVID-19 poses to vulnerable inmates.

Some factors for consideration in granting relief include: the age and vulnerablitit of the prisoner to COVID-19, if the prisoner is classified Low or Minimum, inmate conduct in prison (i.e. free from violence and gang activity), PATTERN score, crime of conviction, and Re-entry plan.

Issue

The Bureau of Prisons is utterly unprepared and equipped to protect the health

and safety of those inits custody against this terminal threat. Personal Protective Equipment (PPE) issue for inmates are non-existent, overcrowding forces prisoners to remain in close proximity to one another, and medical care is scant. Only those prisoners in advanced stages of COVID-19 ever see medical staff, and off-site medical facilities are already taxed with patients, rendering their assistance to prisoners unsubstantial, if at all.

The collective effect of these factors has resulted in a custodial petrie-dish of COVID-19 growth within the prison which exponentially increased the likelihood of prisoners contracting the viral condition and subjecting them to a freseeable death, under the BOP's lack of custodial ability to deal with this pandemic.

Background

Approximately 6 months ago, the world received notice that a life-threatening pandemic under COVID-19 was imminent. Humans everywhere, unprepared and unprotected, were killed by the virus. As the virus proliferated in the United States, our nation experienced extreme and sever measures to protect its citizens from contracting this deadly virus.

Businesses closed, social distancing was implemented, personal protective equipment (PPE) became essential, and sanitary and medical services became an indispensable part of our nation's protective regime.

Despite the alarming rate and efficiency by which COVID-19 spreads, it has found its way into the Federal Prison system and has affected the inmate population en masse.

Discussion

The physical presence of the COVID-19 virus at Gibson's prison is evinced

"4"

by the widespread cases of over 500 prisoners and hundreds of staff members ill from the virus. Also, the CDC has taken residency in the center of the prison's compound having erected 6 M.A.S.H. style medical tents which are equipped with electrical generators, HVAC tubing connecting the tents together, and have been fabricated with 2x4 wood flooring throughout.

It is obvious that these semi-permanent constructions are here for a lengthy time in an effort to control this crisis.

Gibson has been subjected to an ever-increasing litany of imposed restrictions and confinement under conditions set forth by the BOP's reaction to the spread of COVID-19 contamination from within the unit. Guards and staff routinely wear N-95 masks, protective Kyvex medical smocks, latex gloves, eye-protection goggles, and have a bottle of Purell alcohol-gel sanitizer affixed to their belt. This equipment, they maintain throughout their shift for their personal protection.

Gibson and every other prisoner, are denied the ablility to purchase or have mailed in. any of the above listed items which are basic necessities for protection from the virus.

Additionally, the prison has limited providing soap and other personal hygiene supplies to its prisoners even if they are indigent. This practice not only impedes one's own ability to acquire washing materials, but subjects the population to a mass of unwashed bodies for lack of accessibility to soap and toothpaste.

Access to the prison's commissary has been eliminated effective 3/31/20.

The current prison regime has created a practice for which Gibson's sentence is executed under cruel and unusual standards. Gibson believes he is entitled to execution of his sentence under reasonable standards of safety which do not jeopardize his health and safety to minute-by-minute exposure to the deadly COVID-19 virus. In fact, Congress has provided this court with a valuable resource

with which to resdolve this issue. Through the CARES ACT, this court may order the BOP to secure Gibson under home-confinement until such time as this pandemic has abated. District Courts and Circuits across the nation have found merit to this resolution and as of this writing there appear approximately a dozen cases which have been granted this relief (case citations omitted).

B.O.P. Home-confinement Criteria

There exists an additional constitutional issue to consider in this matter in that "[w]hen a person is taken into custody, who by reason of the deprivation of his liberty cannot care for himself, the Constitution imposes upon the [State] a corresponding duty, to assume responsibility for the prisoner's safety and well being." This includes prison conditions which do not pose unreasonable threats, or risk to health and safety to the prisoners in detention. (U.S. Constitution 8th Amendment)

Gibson asserts this issue is prevalent here.

The prison administration at FCI Forrest City currently use a 7-criteria matrix for determining eligibility for home-confinement.
They are:

- Minimum risk score
- No incident reports in the last 12 months
- No history of violence
- No gang activity in prison
- Not a sex offender
- Is a United States citizen

- Has an established home plan

(See Unit Manager Parks' memorandum of 4/10/20 titled "4-09-2020 town hall/follow up) wherein it references "Attorney General Barr's memo dated 26 Mar. 2020." These criteria however, were changed and broadened the ranks of eligible inmates. In A.G. Barr's updated memo of April 6, 2020 and information taken from his BOP Regional Office staff report, he has criticized the risk-assessment tools used by the BOP as potentially unconstitutional. Instead, Barr narrows his criteria to exclude those inmates who are "heinous" : violent gang members or child predators whose circumstances must be weighed against the potential risk of the [prisoner's] exposure to COVID-19.

This memorandum declared the need to "increas[e] the use of home confinement at Institutions most affected by COVID-19...as a tool for combatting the dangers COVID-19 poses to our most vulnerable inmates."

Gibson asserts that under the COVID-19 crisis, the BOP is unable to maintain regular confinement as the term is regularly understood. Instead, the excessive restrictions, unsafe exposure to infected prisoners in an open dorm setting and a categorical disregard for at-risk prisoners who are summarily denied inclusion in the home confinement program, because of their non-death sentence but politically offensive crime -- are unconstitutional. This is so because of the now new form of punishment which is significantly harsher than longdstanding prior practices of incarceration without immediate exposure to highly contagious, deadly forms of disease.

Since this pandemic is both novel and unprecedented, Gibson can find no Circuit precedent which falls squarely on this pandemic issue. However, the basic precepts of Farmer v. Brennan 511 U.S. 835 apply where the "official knows of and disregards an excessive risk to inmate health and safety...". While incarcerated under current standards, Gibson remains at high-risk from multiple sources both internally and

from personnel who are transient between home and work. The prison is aware of the many vulnerabilities present yet is unable to provide safety absent tortuous isolation assignment in the already overcrowded SHU. The open dorm cubicles which house the prisoners at FCI-FC offer no protection from the contagious conveyances of the virus.

Gibson has witnessed approximately 15 prisoners removed from his housing unit who have contracted the deadly illness, and dozens of others from other housing units. Yet, the prison maintains the same conditions despite these repeated examples. The systematic and gross deficiencis in staffing, facilities, equipment and procedures remain life-threatening despite prison official's motives.

The degree of crowding and exposure to sick prisoners will undoubtably adversely resolve this issue for Gibson unless this court offers prompt, preventative intervention. Additional authority exists pursuant to 18 U.S.C. §3626(a)(3), but Gibson is not necessarily seeking release, or RIS, but includes a request for reassignment to a temporary home-confinement setting for the duration of this event. RIS is an additional, optional remedy under the FIRST STEP ACT'S "extraordinary and compelling" provision.

Home Plan

Gibson's home plan is best presented in his personal statement to the court:

"As the pandemic continues to increase the amount of deaths in the world, it has caused me to reconsider my previous life choices. After my first year of incarceration, I began taking Adult Continuing Education (ACE) courses in an attempt to rehabilitate my life and find a means of profitable employment. Furthermore, if I am granted home-confinement I will be picked-up by my brother, Jeff L. Merritt, and driven from Forrest City, Arkansas to Houston, Texas to the address 4601 N. Roseneath Dr. 72021. This is the home of my mother, Rose Gibson, who has been a resident at the

home since the year of 1994. This is the home that will be my residence of my home-confinement, and where I will abide by all supervised release conditions, if I am granted home-confinement.

Once home and reunited with my family, I will utilize the skills that I have learned to further my employment pursuits in the graphic design field. Essentially, my plans consists of:

- Being a model, law-abiding citizen

- Reacquaint with my wife and three children, as I have been estranged for the past 5 years

- I will seek to assist a grassroots organization aimed towards assisting the community with the problems created by the current pandemic.

- Seek out viable employment in the service industry (granted that I am allowed to have employment)

- Using the earnings from my employment, take online college courses from The University of Phoenix, Graphic Design major; and

- Financially provide for my family as well as do the necessary lawful things to ensure their well being.

As things may look very easy on paper, I can assure you that I am fully prepared for any challenges that may come my way.

I have been productive during my incarceration period and have used my time to grow spiritually and to further my education. I pray for the opportunity to re-enter society and become a meaningful, contributory member of my community.

Without this court's intervention, I fear my hard work, and future aspirations will be in vain because I am particularly susceptible to the COVID-19 virus. I was diagnosed, at the age of 5, with severe asthma and have carried this affliction into adulthood. This court's discretion will likely give me a renewed chance to survive this crisis.

Conclusion

Gibson has demonstrated that he is no longer safe in the prison/custodial detention setting. If he were to be assigned home-confinement, he could practice effective social distancing, have access to emergency health care in the event of serious need, and would stand a likely chance of surviving this pandemic. As it stands, Gibson has no chance and will likely succumb to the exposure of this virus under his current, debilitated medical state, combined with the BOP's inability to provide for his current care, health, and safety.

Gibson prays this court find merit to his claim and grants him temporary reassignment to home-confinement until such time as this crisis has abated, or any other relief this court deems proper.

Verification

I have read the foregoing Exigent and Emergent Motion and hereby verify that the matters alleged herein are true, except to matters alleged on information and belief, and as to those, I believe them to be true and correct. Executed at Forrest City, Arkansas on this 19th day of April, 2020.

Earnest Gibson IV<br>
Defendant, Pro Se

Certificate of Service

I certify under the penalty of perjury that the foregoing Exigent and Emergent Motion was placed in the prison's internal mail system, postage pre-paid, for service upon this court via U.S. Mail on this 19th day of April, 2020 to 1000 Louisiana St. Houston, Texas 77002. Gibson asks this court's clerk to serve all other interested

parties by electronic notification and to provide him with a stamped and filed copy of this motion.

                                                                                  Earnest Gibson IV
                                                                                  Defendant, Pro Se