United States District Court
Southern District of Texas
**ENTERED**
May 27, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. H-12-600-2 |
| | § | |
| EARNEST GIBSON, IV | § | |

**MEMORANDUM AND ORDER FOR RECOMMENDING THAT THE BOP ORDER THE DEFENDANT'S TEMPORARY RELEASE TO A TWO-YEAR PERIOD OF SUPERVISED RELEASE CONDITIONED ON HOME CONFINEMENT, WITH A REQUIRED RETURN TO PRISON AFTER THE TWO YEARS.**

Earnest Gibson, IV, a federal prison inmate, asks the court to grant his motion for compassionate release by requiring him to spend the rest of the sentence in home confinement, as a condition of supervised release. (Docket Entry Nos. 858, 860). He moved under 18 U.S.C. § 3582(c)(1)(A), relying on the threat of infection from the COVID-19 virus and his susceptibility to severe symptoms because of his underlying medical conditions. The government opposed the motion, and the court appointed the Federal Public Defender to represent Gibson in the matter. (Docket Entry Nos. 859, 863). Defense counsel replied to the government's opposition, the government filed a surreply, and defense counsel filed a sur-surreply. (Docket Entry Nos. 867, 869, 871).

The court has carefully considered the briefs, the record, and the applicable law. They present a close case. On the one hand, while the exhaustion requirement is met, Gibson is not presently infected with COVID-19, and the BOP is making efforts to reduce the risk that he and others will be infected. On the other hand, Gibson clearly has a number of the factors that are

known to contribute to severe illness and even death if he becomes infected. Almost all jails and detention facilities have had outbreaks of COVID-19 that are extraordinarily difficult to contain with available resources, manpower, and space, despite strenuous efforts. After careful consideration, the court strongly recommends that the BOP transfer Gibson to home confinement for two years before serving his remaining sentence in BOP custody. At bottom, the reason is simple. Gibson's crime of conviction is serious and the sentence is long as a result. But he did not commit a capital offense, and requiring him to remain in prison during the pandemic may be a death sentence. That cannot be tolerated.

The reasons for this result are explained below.

**I.    Background**

Gibson was convicted on five counts related to his role in a Medicare-fraud scheme that resulted in $160 million in false claims. The district court sentenced Gibson to a 240-month prison sentence and ordered $7,518,480.11 in restitution. The Fifth Circuit affirmed Gibson's conviction in *United States v. Gibson*, 875 F.3d 179 (5th Cir. 2017). Gibson is incarcerated at the Forrest City FCI in Arkansas.

The Presentence Report describes Gibson's role in the scheme. Gibson was the administrator of a partial hospitalization program, Devotions Care Solutions, which was a satellite program of Riverside Hospital. An undercover investigation revealed that Riverside was the center of an extensive scheme involving fraudulent claims for Medicare-reimbursed partial hospitalization program services, including services allegedly provided by Devotions Care. As Devotions Care's administrator, Gibson admitted patients who were ineligible for the program's services, directed his employees to bill Medicare for services that were not provided, and paid kickbacks for patient referrals to his program. Many of the Devotions Care patients suffered

from substance abuse problems and psychological conditions, making it easy to use them in carrying out the fraud scheme. Gibson was held accountable for over $20 million in claims as the fraud loss amount.

The PSR assessed Gibson's offense level at 43, including enhancements for knowing that victims of the scheme were vulnerable, for his role as a manager in the scheme, and for his money-laundering activities. The PSR calculated Gibson's criminal history score at I. The court sentenced Gibson below the Guideline range, to a 240-month prison term. He has spent nearly five years in prison, a quarter of his sentence. He asks the court to reduce his sentence to time served and to add a home-confinement condition, based on compassionate release in the face of the COVID-19 pandemic. The government opposes, based on a failure to exhaust and on Gibson's inability to satisfy the criteria for the relief he seeks.

**II.     Exhaustion**

Before filing a compassionate release motion in federal court, a defendant must first exhaust administrative procedures. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a term of imprisonment on finding "extraordinary and compelling reasons," consistent with Guideline policy statements. Under the statute, as amended by the First Step Act, the court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

According to defense counsel, Gibson emailed a request on April 9, 2020, to the Forrest City FCI warden, requesting home confinement under the First Step Act and the CARES Act.

(Docket Entry No. 867 at 11). The government responds that because Gibson asked the Warden for home confinement rather than a sentence reduction, he did not exhaust his administrative remedies. This argument is unpersuasive. Gibson did not ask for release without conditions. He did ask to serve his sentence on home confinement, even expressing willingness to surrender to custody after the COVID-19 pandemic has ended. This meets the purpose and spirit, and the facial meaning, of the exhaustion requirement. Alternatively, even if the steps he took fail to meet the literal requirements to exhaust, they justify waiving the need for additional steps that would lead the court to find a failure to exhaust. *See, e.g.*, *Valentine v. Collier*, 956 F.3d 797, 807 (5th Cir. 2020) (Higginson, J., concurring) ("Several courts have concluded that this requirement is not absolute and that it can be waived by the government or by the court, therefore justifying an exception in the unique circumstances of the COVID-19 pandemic."); *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *6 (S.D.N.Y. Apr. 14, 2020) (the exhaustion requirement is not jurisdictional and can be waived).

Gibson also showed extraordinary and compelling reasons justifying compassionate release to home confinement for the duration of the pandemic. The merits analysis is set out below.

### III.   The Merits

Section 3582(c)(1)(A)(ii) requires any sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). The policy statement allows a reduction for "extraordinary and compelling reasons," only if the reasons are "consistent with this policy statement." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(1)(A), (3) (U.S. SENTENCING COMM'N 2018). Application Note 1 explains that "extraordinary and compelling reasons exist under any of the circumstances set

4

forth below." *Id.* § 1B1.13 cmt. n.1.  These circumstances are: (a) suffering from a terminal illness or other medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (b) being at least 65 years old and "experiencing a serious deterioration in physical or mental health because of the aging process" and having "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less"; (c) the "death or incapacitation of the caregiver of the defendant's minor child or minor children" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"; or (d) "[a]s determined by the Director of the Bureau of Prisons, . . . an extraordinary and compelling reason other than, or in combination with, the [above] reasons." *Id.* § 1B1.13 cmt. n.1.

Courts differ on whether Application Note 1 remained binding after Congress passed the First Step Act.  *Compare United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court."), *with United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020) (the district court did not err by considering § 1B1.13 commentary when determining whether an "extraordinary and compelling reason" existed that warranted a sentence reduction).

Gibson states that his underlying preexisting conditions increase the risk of severe symptoms if he is infected with COVID-19.  At this time, he has tested negative for the virus. While Gibson is in his forties, below the more vulnerable ages, he suffers from hypertension, severe obesity, and type II diabetes.  All are known comorbidity factors in cases of COVID-19 infection.  Gibson cites the high number of positive inmate cases at the Forrest City FCI, which

5

has the highest number of COVID-19 positive inmates of any federal prison: 363 as of May 22, 2020. (Docket Entry No. 872 at 3). Gibson argues that his two-and-one half years of pretrial release that he served without incident, his status as a nonviolent, first-time offender, and his plan to live with his mother after release, all support a sentence reduction.

Gibson's reasons show the "extraordinary and compelling reasons" necessary for a sentencing reduction under § 3582(c)(1)(A). Although he recently tested negative for the virus, that is only as of the moment of the test. The high number of cases at the FCI makes it more likely that the longer he remains there, the higher the risk of infection. While his medical condition is not presently terminal, he does suffer from serious physical or other medical conditions—diabetes, severe obesity, and hypertension—that "substantially diminishes" his ability "to provide self-care"—remaining free of the most severe COVID-19 symptoms—"within the environment of a correctional facility." U.S.S.G § 1B1.13 cmt. n.1(A). If he were to contract COVID-19, his underlying conditions mean that he would be at high risk of severe symptoms, from which he would not be expected to recover fully. *Id.* § 1B1.13 cmt. n.1(A). These facts provide "extraordinary and compelling reasons" for compassionate release to home confinement.

The court recognizes, and credits, BOP's implementation of a number of steps to mitigate the risks of COVID-19 transmission in the BOP institutions. These steps include providing inmates with masks, hand sanitizer, and hand soap, isolating inmates located in the pods that have the most positive cases, and allowing the CDC to set up a testing center at the Forrest City FCI. But as Gibson points out, the BOP's efforts to manage the outbreak at Forrest City have proven insufficient. Gibson cites its practice of "cohorting" inmates who have tested positive together, which the CDC recommends against for those at higher risk of severe illness. Despite

attempting to separate those who test positive and those who are both symptomatic and test positive from other inmates, the Forrest City FCI has seen a nearly 600 percent increase in positive inmates within a short period.

The grave risks of the COVID-19 virus are heightened for Gibson by the enhanced risks presented when individuals are required to live together in close quarters and by his own comorbidity factors. Gibson has shown extraordinary and compelling reasons that would justify compassionate release to home confinement during the COVID-19 pandemic.

The § 3553(a) factors support this result. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Agomuoh*, No. 16-20196, 2020 WL 2526113, at *10 (E.D. Mich. May 18, 2020) (the § 3553(a) factors supported compassionate release for an inmate convicted of Medicare fraud); *United States v. Musleh*, No. 18-197 (S.D. Tex. April 22, 2020), ECF No. 217, 218 (wire fraud); *United States v. Brannan*, No. 15-80 (S.D. Tex. April 2, 2020), ECF No. 286 (bank fraud). Gibson has served five years, a quarter of his sentence, in custody. His criminal history is I, and he has had no history of violence in or out of prison. While his codefendants and other participants in the Riverside Hospital scheme had their sentence-reduction motions denied, *see, e.g.*, Order Denying Motion for Compassionate Release, May 5, 2020, ECF 865; Order, *United States v. Mazkouri*, No. 4:16-cr-213 (S.D. Tex. May 5, 2020), ECF 187, none of these offenders had Gibson's comorbidity factors; some were in facilities with outbreaks less severe than the Forrest City FCI, which is the federal prison with the largest COVID-19 outbreak in the country; and others presented distinguishable facts that undermined their compassionate release motions.

The court finds that Gibson exhausted his administrative remedies and that he has shown extraordinary and compelling reasons that would warrant release from custody and a lengthy term of supervised release. But Gibson's felony convictions each carry a statutory maximum of

7

three years of supervised release, to run concurrently. *See* 18 U.S.C. § 3624(e) ("The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release."). The court finds that reducing his custodial sentence to time served, and imposing only 3 years of supervised release—the maximum amount allowed for Gibson's convictions—is disproportionate to the 180 months that remain in Gibson's sentence.

      Nor does this court have the power to order the BOP to transfer Gibson to home confinement for the duration of the pandemic. *See United States v. Barber*, No. 6:18-cr-446-AA, 2020 WL 2404679, at *5 n.8 (D. Or. May 12, 2020) (citing 18 U.S.C. § 3621(b)) ("The Court notes that an alternative solution would be for defendant to be transferred to home confinement while recovering from the virus until the current crisis passes. He could recover and then return to custody to complete his current sentence. However, Congress has not given courts this tool, rather only BOP has discretion take such an action."); *United States v. Jones*, 17-cr-70-VC-1, 2020 WL 1814616, at *1 (N.D. Cal. Apr. 10, 2020) ("The Court is without power to order a transfer; that discretion is committed to the Bureau of Prisons."). But the BOP must consider "any statement by the court that imposed the sentence" when considering whether to transfer a prisoner. 18 U.S.C. § 3621(b). This court strongly recommends, based on Gibson's extraordinary and compelling circumstances that would otherwise warrant reducing his custodial sentence to time served and imposing supervised release, that the BOP transfer Gibson to home confinement for a two-year period before serving his remaining sentence in BOP custody. The court also recommends that the BOP impose the remaining conditions for supervised release in the original judgment during the home confinement period.

## IV. Conclusion

The court denies Gibson's request for compassionate release and strongly recommends that the BOP transfer Gibson to home confinement for two years.

SIGNED on May 27, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge