IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-12-600-2 |
| | § | |
| | § | CIVIL ACTION NO. H-18-4216 |
| | § | |
| EARNEST GIBSON IV | § | |

**MEMORANDUM OPINION AND ORDER**

A jury convicted Earnest Gibson IV (Gibson IV)[1] on five counts of Medicare and Medicaid fraud. In June 2015, he was sentenced to a 240-month prison term and ordered to pay $7,518,480.11 in restitution. (Docket Entry No. 510). The Fifth Circuit affirmed Gibson IV's convictions and sentences in November 2017. *United States v. Gibson*, 875 F.3d 179 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2664 (2018). Gibson IV then filed a motion to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255, (Docket Entry No. 776), which this court denied. (Docket Entry Nos. 832, 833). Gibson IV now moves for reconsideration of that order. (Docket Entry No. 842). Gibson IV's motion is denied for the reasons explained below.

**I.     Background**

The Fifth Circuit summarized the background of the case in its decision affirming Gibson IV's convictions and sentences:

> This case presents another instance of Medicare fraud involving Partial Hospitalization Programs (PHPs). PHPs are outpatient programs designed to provide daily, intensive treatment for patients suffering from an "acute exacerbation" of a chronic mental disorder. Houston's Riverside General Hospital (Riverside) ran PHPs, both onsite and at satellite locations. Riverside's Chief

---

[1]Gibson's father was a codefendant. Gibson IV is the son; Gibson III is the father.

Executive Officer, president, and administrator was Gibson III. His son, Gibson IV, operated an affiliated, offsite PHP, Devotions Care Solutions (Devotions).[2]

In 2006, Medicare approved Riverside and its PHPs to submit reimbursement claims. Not surprisingly, a PHP costs more to operate than does a standard outpatient service. So it is also unsurprising that Medicare attached several strings to its PHP coverage.

One condition was patient eligibility. To bill Medicare for PHP services, a physician needed to certify that the Medicare beneficiary required treatment comparable with inpatient care. Naturally, a patient must have had "the capacity for active participation in all phases of the multidisciplinary and multimodal program." Patients diagnosed with Alzheimer's or dementia, for example, would raise "red flag[s]" for Medicare.

The type of treatment mattered, too. A doctor must have certified that the PHP services would be "furnished while the individual [wa]s under the care of a physician" according to "an individualized written plan of care." Expressly excluded from Medicare coverage were, to name a few: "services to hospital inpatients and meals, self-administered medications and transportation"; "custodial or respite care"; "programs attempting to maintain psychiatric wellness"; "daycare programs for the chronically mentally ill"; and "services to a nursing facility resident that should be expected to be provided by the nursing facility staff." And if a hospital operated an offsite PHP—like Gibson IV's Devotions—treatment must have occurred under a licensed physician's "direct supervision." That meant the physician had to be "physically present" in the office suite housing the offsite PHP and "immediately available to provide assistance and direction throughout the time the employee is performing services."

Medicare also imposed timing requirements. A PHP patient needed to receive "active treatment" at least four days and twenty hours a week. And if a patient's condition "improve[d] or stabilize[d]," or if she could not benefit from "the intensive multimodal treatment available in the PHP," the PHP had to discharge her.

In 2006—and again in 2008, 2009, and 2011—Gibson III certified that Riverside's PHPs complied with "the laws, regulations and program instructions of the Medicare program." That, according to the government, turned out to be false. As the prosecutors put it, Riverside submitted on behalf of its PHPs $160,336,451.90 in Medicare bills, and Medicare paid $46,753,180.04 before realizing it had been swindled.

On October 1, 2012, a grand jury in the Southern District of Texas indicted Gibson III, Gibson IV, and five others on thirteen counts, alleging various illegal schemes

---

[2] As discussed below, Gibson IV disputes that Devotions was offsite.

relating to Riverside PHPs. Facing the prospect of a jury trial, three defendants pleaded guilty. Two of them turned government's witnesses to testify against the Gibsons. By contrast, the Gibsons put the government to its burden.

Thus ensued a month-long trial. On October 20, 2014, a jury convicted Gibson III of conspiracy to commit healthcare fraud (Count 1), conspiracy to defraud the government and violate the Anti-Kickback Statute (AKS) (Count 2), seven substantive kickback offenses (Counts 3, 4, 5, 7, 9, 11 & 12), and conspiracy to commit money laundering promotion (Count 13). The jury found Gibson IV guilty on each conspiracy charge (Counts 1, 2 & 13) and two substantive kickback offenses (Counts 11 & 12). Soon after, the district court sentenced Gibson III to 540 months' imprisonment and $46,753,180.04 in restitution. On Gibson IV the court imposed a 240–month prison term and $7,518,480.11 in restitution.

*Gibson*, 875 F.3d at 184-85 (footnotes omitted).

## II.     Standard of Review

Gibson IV styles his motion as one for reconsideration, but the court construes it as a motion for relief from judgment under Rule 60 of the Federal Rules of Civil Procedure.[3] A motion under Rule 60(b) may be granted if the party can show (1) mistake, inadvertence, surprise, or excusable neglect; (2) certain newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) voidness of the judgment; (5) events casting doubt on the validity or equity of continuing to apply the judgment; or (6) "any other reason that justifies relief." FED. R. CIV. P. 60(b)(1)–(6). As is clear from this limited list, a litigant may not use a Rule 60(b) motion to raise arguments that were or could have been raised prior to judgment or to argue new legal theories. *See Williams v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 470 F. App'x 309, 313 (5th Cir. 2012); *Dial One of the Mid-S., Inc. v. BellSouth Telecomms, Inc.*, 401 F.3d 603, 607 (5th Cir. 2005). And the court can consider the motion only if it "attacks . . . some defect in the integrity

---

[3]The motion cannot be construed as a motion to alter or amend the judgment because it was filed more than 28 days after the judgment was entered. *See* Fed. R. Civ. P. 59(e). Gibson IV argues that the time for filing should run from the date he received notice of the judgment, but Rule 59(e) is clear that a motion to alter or amend must be filed within 28 days of the *entry of judgment*, not from the date the movant received notice of the judgment.

of the federal habeas proceedings" rather than the substance of the court's original decision on the merits. *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

In his motion, Gibson IV argues that the court failed to fully address one of his claims, completely failed to address another claim, and failed to apply the correct law to a third claim. To the extent that Gibson IV challenges the court's original analysis of his claims, the motion attacks the substance of the court's original decision and so does not present a claim cognizable under Rule 60(b). But the court will, under Rule 60(b)(1), consider the claim that it overlooked. The court will also clarify its decision on the claim Gibson IV contends the court failed to fully address.

## III. Analysis

In his § 2255 motion, Gibson IV claimed that counsel provided ineffective assistance by failing to challenge the government's characterization of Devotions as an offsite PHP and by failing to challenge the government's use of false testimony. He also claimed that appellate counsel provided ineffective assistance by failing to raise an issue concerning multiplicitous sentences. In his current motion, Gibson IV alleges that this court failed to fully address his claim concerning the definition of "offsite" programs and completely failed to address his false testimony claim. He also alleges that this court applied the incorrect law when addressing his ineffective assistance of appellate counsel claim concerning his sentences.

### A. Offsite Program

Under the relevant Medicare regulations, offsite PHPs are subject to more stringent medical supervision requirements than onsite PHPs. At trial, the government characterized Devotions as an offsite PHP and argued that Medicare regulations required the daily presence of a medical doctor at the facility. Gibson IV's defense counsel did not challenge this characterization at trial or on appeal. In his § 2255 motion, Gibson IV argued that Devotions was actually an onsite

4

provider under the applicable Medicare regulations, and that had counsel challenged the government's characterization, the evidence would have negated the specific intent element of the charged crimes. Gibson IV argued that both his trial and appellate counsel were ineffective for failing to familiarize themselves with the relevant Medicare regulations and for failing to challenge the government's characterization of Devotions as an offsite PHP. In his motion for reconsideration, Gibson IV argues that this court erred by not parsing the relevant statutes and regulations to address his claim.

Gibson IV alleged in his § 2255 motion that trial counsel should have argued that the Devotions buildings were owned by Riverside and were part of the Riverside campus, both of which he alleged qualified Devotions as an onsite PHP. Gibson IV's trial counsel, Matt Hennessy, filed an affidavit in response to Gibson IV's § 2255 motion. In it, he acknowledged that the Devotions buildings were owned by Riverside, but he noted that the three locations—Riverside's campus and the two Devotions buildings—were five to ten miles away from each other. Hennessy stated that he visited the locations before trial and did not believe that they could qualify as onsite PHPs under the applicable regulations, regardless of which entity owned the buildings. (Docket Entry No. 801, p. 2). Hennessy specifically stated that he evaluated the physical location of the facilities under the relevant regulations.

Gibson IV's argument that because Riverside owned the Devotions buildings, the buildings qualified as Riverside's "main buildings" is unconvincing. Riverside has a campus. Owning buildings at a location other than that campus does not make those other buildings Riverside's "main buildings." To hold otherwise would eviscerate the distinction between on- and offsite locations. Gibson IV cites to additional regulations that he contends support his position that

Devotions qualified as an onsite PHP, but he cites no authority supporting his interpretation of those regulations.

In denying Gibson IV's § 2255 motion, this court found that Hennessy's evaluation of the issue complied with prevailing professional standards, thereby implicitly finding that his understanding of the applicable regulations was correct. The court now explicitly finds that Hennessy's conclusion is consistent with relevant regulations. *See, e.g.*, 42 C.F.R. § 413.65(a)(2) (defining a hospital's campus as "the physical area immediately adjacent to the provider's main buildings, [and] other areas and structures that are not strictly contiguous to the main buildings but are located within 250 yards of the main buildings . . . ."). Gibson IV fails to demonstrate that this court erred in denying relief on this claim.

### B.  False Testimony

Gibson IV correctly notes that this court overlooked the claim raised in his amended § 2255 motion that trial counsel was ineffective for failing to object to what Gibson IV characterizes as the government's knowing use of perjured testimony and that his appellate counsel was deficient for failing to raise this issue on appeal. The court may correct this oversight under Rule 60(b)(1).

Claims of ineffective assistance of counsel, whether at trial or on direct appeal, are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a defendant to show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

To establish the deficient-performance prong of *Strickland*, the defendant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. To meet

this standard, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied") (citation omitted). Reasonableness is measured against "prevailing professional norms" and is viewed under the totality of the circumstances. *Strickland*, 466 U.S. at 688. Review of counsel's performance is "highly deferential." *Id.* at 689.

To establish *Strickland*'s prejudice prong, the petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. This requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### 1. Trial Counsel

Gibson IV contends that trial counsel was ineffective for failing to challenge the testimony of Julian Kimble, a patient recruiter who testified that he received kickbacks for sending patients to Devotions. Gibson IV asserts that Kimble lied about the number of patients he sent to Devotions and about the Medicare reimbursement rate, and that counsel should have challenged this testimony. But even assuming that Gibson IV is correct that Kimble lied, he fails to show prejudice because, as this court noted in denying Gibson IV's § 2255 motion, there was substantial evidence that Gibson IV carried out a scheme to defraud the government and pay kickbacks.

For example, Medicare requires that a physician be present at an offsite PHP whenever patient care is provided. But the evidence presented at trial showed that a supervising physician came to Devotions no more than once a week, spending only three to six hours at the facility. (Docket Entry Nos. 371, p. 2308; 375, pp. 3557-59). Patients at Devotions complained that they usually did not see any physician, and on the rare occasions when they did see a physician, it was for no more than ten minutes. (Docket Entry No. 371, pp. 2307, 2310). The government introduced forms containing the patients' complaints that they did not see a physician long or often enough, did not receive medication on time, and that the Devotions PHP was understaffed. (*Id.* at 2313, 2322-25; Gov't Exhs. 185-87). Evidence also showed that the physician would backdate his signatures and did not review the patient files he signed. (Docket Entry No. 371, p. 2311). The office manager testified that when she told Gibson IV about the physician not being present, Gibson IV said he would contact the physician, but nothing changed. (*Id.* at 2325). The trial evidence showed that Gibson IV was told that a physician was not at Devotions often enough to treat patients, much less to meet Medicare requirements.

The government also presented evidence of billing fraud. Kristin Behn, a Devotions office manager, testified that Gibson IV ordered her to engage in fraudulent billing practices, including billing Medicare even when patients did not show up. Gibson IV told Behn not to bill patients who were "smart enough or aware enough to read their Medicare bill or that have families that are heavily involved in their care." (*Id.* at 2359). But he also instructed her to bill patients who lived in care homes or nursing homes "whether they were there or not . . . ." (*Id.*).

The government also presented evidence that, under Medicare regulations, a patient must be capable of meaningful participation in treatment to qualify for PHP services. (Docket Entry No. 368, pp. 1095-96). The indictment alleged, and ample trial evidence established, that

Devotions admitted ineligible patients, including individuals with dementia and substance abuse problems, and recycled past patients so that Medicare would pay their benefits again. (Docket Entry Nos. 1, pp. 6-8; 367, pp. 792-93; 371, pp. 2298-99; 373, p. 2824).

In light of the substantial evidence of fraud and kickbacks, there is no reasonable probability that the outcome of the trial would have been different if trial counsel had objected to Kimble's testimony. Even if Gibson IV is correct that Kimble lied and that trial counsel should have objected—facts this court does not find—Gibson IV's claim fails because he does not satisfy *Strickland*'s prejudice requirement.

### 2. Appellate Counsel

Gibson IV also alleges that his appellate counsel was ineffective for failing to argue that the government knowingly used perjured testimony. The government's knowing use of perjured testimony violates a defendant's right to due process of law. *See Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000). The Fifth Circuit has explained, however, that

> [t]o establish a due process violation based on the State's knowing use of false or misleading evidence, [a movant] must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. Evidence is false if, inter alia, it is specific misleading evidence important to the prosecution's case in chief. False evidence is material only if there is any reasonable likelihood that [it] could have affected the jury's verdict.

*Nobles v. Johnson*, 172 F.3d 409, 415 (5th Cir. 1997) (cleaned up). "We do not . . . automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. . . .' A finding of materiality of the evidence is required." *Giglio*, 405 U.S. at 154 (quoting *United States v. Keogh*, 391 F.2d 138, 148 (2d Cir. 1968)). When the question of materiality arises, "a new trial is

required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Id.*

As discussed above, there is no reasonable likelihood that the judgment would have been different absent Kimble's allegedly false testimony. Because this claim would have been without merit, appellate counsel was not ineffective for declining to raise it. *See, e.g., Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). Gibson IV's claim fails because he suffered no prejudice as a result of counsel's choice.

### C. Ineffective Assistance of Appellate Counsel

Finally, Gibson IV claims that this court overlooked material facts and applied the wrong legal standard to his claim that appellate counsel was ineffective for failing to raise an argument on appeal about multiplicitous sentences. This court addressed this argument when ruling on Gibson IV's § 2255 motion. His current argument is an attack on the substance, rather than the integrity, of this court's decision on that claim. While this issue may be a proper argument for appeal, it is not properly raised in a Rule 60(b) motion.

### IV. Conclusion

Earnest Gibson IV's motion for relief from judgment, (Docket Entry No. 842), is **denied**. Because reasonable jurists could not disagree with the court's denial of this motion, no certificate of appealability is issued. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

SIGNED on May 26, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge